UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,      :

         - v. -          :      07 Cr. 1045 (JSR)
                                     12 Cv. 7022 (JSR)

TREMAIN TAZEWELL,         :

          Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TREMAIN TAZEWELL'S MOTION TO DISMISS INDICTMENT AND WITHDRAW PLEA AGREEMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Antonia M. Apps
Assistant United States Attorney
    -Of Counsel-

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motion of the defendant, Tremain Tazewell, to dismiss the indictment and withdraw his guilty plea pursuant to Rules 12 and 11 of the Federal Rules of Criminal Procedure, filed on January 6, 2012, by Tazewell, pro se ("Petition").  Because the defendant was sentenced in 2009, the defendant is procedurally barred from seeking to withdraw his guilty plea pursuant to Rule 11, see Fed. R. Crim. Proc. 11(e), or from now moving to dismiss the indictment under Rule 12, see Fed. R. Crim. Proc. 12(b)(3).  Accordingly, the Government treats the defendant's Petition as one made pursuant to 28 U.S.C. § 2255.

Liberally construing his Petition, Tazewell appears to raise the following objections: (1) that the indictment did not set forth all of the elements of the offense, including the element of defendant's intent and the drug type, and therefore it failed to satisfy the Fifth Amendment (Pet. at  3-4); (2) the defendant was not informed of all the elements of the crime during the plea proceeding and there was an insufficient factual allocution by the defendant (Pet. at 3); (3) the Court failed to make the required factual findings for the sentence imposed (Pet. at 3); and (4) the Court had the power to withdraw the prior felony information and should gave done so (Pet. at 2).  As explained more fully below, Tazewell's Petition should be denied in its entirety for the following reasons: (i) Tazewell's claims are procedurally barred, because his time for collaterally attacking his plea and sentence has expired; (ii) Tazewell has procedurally defaulted in his claims because he did not raise them on direct appeal; (iii) Tazewell's claims fail because he pled guilty pursuant to a plea agreement with a stipulated sentencing range and a waiver provision, and because he received a sentence below the stipulated range, he has waived his right

1

to file a motion pursuant to Title 28, United States Code, Section 2255; and (iv) Tazewell's

claims fails on the merits because the indictment sets forth the elements of the offense, his plea

proceeding complied in all respects with Rule 11, his sentence was procedurally and

substantively reasonable, and the Court did not have the power to withdraw the prior felony

information. Accordingly, Tazewell's Petition should be denied in its entirety.

## BACKGROUND

**I.       Offense Conduct**

Between 2002 and July 2006, Tazewell distributed heroin in Baltimore that he had

purchased, with the assistance of others, from the New York and New Jersey areas.

Beginning in 2003, Tazewell asked his friend (CC-1), to travel to the New York and New

Jersey areas to taste heroin for him.  CC-1 made a handful of trips in 2004 before he was

arrested, and sent to prison.  After his release in 2006, CC-1 made further trips to the New York

and New Jersey area to taste and purchase heroin at the direction of Tazewell.

Law enforcement learned about Tazewell's role as follows.  On or about July 13, 2006, a

coconspirator (CC-2) was stopped at the US/Mexican border in Hidalgo, Texas and found to be

carrying approximately 5.9 kilograms of heroin sewn into his clothing.  CC-2 informed law

enforcement that he was planning to take the heroin to Manhattan to give it to an individual there

(CC-3), if the heroin was acceptable.  CC-2 agreed to go through with the delivery under the

supervision of agents of Immigration and Customs Enforcement ("ICE").

On July 18, 2006, CC-2 delivered the heroin to CC-3 on the corner 47th Street and 8th

Avenue, New York.  CC-3 was then arrested, and told law enforcement that he was going to

deliver the drugs to a black male – CC-1– in Manhattan.  CC-3 agreed to go through with that

deal under law enforcement supervision.

On July 17, 2006, CC-1 drove from Baltimore to New Jersey at Tazewell's request (and

in Tazewell's car) to test and purchase heroin.[1]  Tazewell have given CC-1 a yellow back

containing $35,000 for the exchange.  As CC-1 was driving to New Jersey, Tazewell called CC-

1 and told him to give CC-2 $4,000 in cash.  CC-1 followed these instructions, and then checked

into a hotel.  The next day, on July 18, 2006, Tazewell again called CC-1 and told him to get a

sample of the heroin from CC-2, to test the sample, and then provide CC-2 with the rest of the

money if the heroin was acceptable product.   CC-1 was arrested after he took the sample from

CC-3.  Agents found the yellow bag containing approximately $31,000 in CC-1's hotel room.

Based on the information subsequently provided by CC-1, and the heroin seized in

connection with CC-1's arrest on July 18, 2006, law enforcement believe that CC-1 was

involved with purchasing approximately 10 kilograms of heroin for Tazewell.

Tazewell was arrested on a Complaint on July 13, 2007, and made post-arrest statements

in which he admitted he was a heroin dealer in Baltimore City and that he traveled to New York

City to purchase heroin.

## II.      Indictment and Prior Felony Information

Tazewell was charged in a one-count indictment with conspiracy to distribute and

possess with intent to distribute at least one kilogram and more of heroin, in violation of Title 21,

United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A).  See Exhibit A.  The Indictment

---

[1]        CC-1's statements that the car he was driving belonged to Tazewell was
corroborated in a number of ways, including fingerprints in the car that matched Tazewell's and
various bank and store receipts in the name of Tazewell.

set forth the statutory language, the amount of heroin that was the subject of the conspiracy, and

two overt acts reflecting Tazewell's instructions to CC-1 during the course of the drug

distribution conspiracy.

On August 13, 2008, approximately ten days prior to the start of the scheduled trial in

this case and pursuant to Title 21, United States Code, Section 851, the Government filed a prior

felony information, which stated as follows:

> On or about December 31, 1997, in New York Supreme Court,
> Queens County, TREMAIN ARRNEL TAZEWELL, a/k/a "Roc,"
> a/k/a "Slim," the defendant, was convicted of attempted criminal
> possession of a controlled substance in the third degree, in
> violation of New York Penal Law 220.16(1), a Class C Felony, for
> which he received a sentence of three to six years' imprisonment.
>
> Accordingly, TREMAIN ARRNEL TAZEWELL, a/k/a "Roc,"
> a/k/a "Slim," the defendant, is subject to the enhanced penalties of
> Title 21, United States Code, Section 841(b)(1)(A).

## III.   Tazewell's Plea

On September 2, 2008, Tazewell pled guilty, pursuant to a plea agreement dated August

29, 2008 (the "Plea Agreement," attached as Exhibit B) to the charge contained in the

Indictment.  In the Plea Agreement, the parties stipulated that Tazewell's offense level was 34,

calculated as follows:

(1)   Pursuant to U.S.S.G. §§ 2D1.1(a)(3) and 2D1.1(c)(3), the base offense level was

34, because the defendant possessed with the intent to distribute at least 3 but less

than 10 kilograms of heroin.

(2)   Notwithstanding the above, and pursuant to U.S.S.G. § 4B1.1(a), the defendant

was a career offender because (1) the defendant was at least 18 years old at the

time of the instant offense, (2) the instant offense is a felony controlled substance

4

offense, and (3) the defendant has at least two prior felony convictions for
controlled substance offenses.  Pursuant to U.S.S.G. § 4B1.1(b)(A), the
defendant's offense level was 37, because the instant offense carried a statutory
maximum of life imprisonment.

(3)     Because the defendant timely accepted responsibility for his conduct, he was
entitled a 3-level reduction in the offense level pursuant to U.S.S.G. § 3E1.1(a) &
(b).

(4)     The parties agreed that, in accordance with the above, the applicable Guidelines
offense level was 34.

The parties also stipulated that Tazewell's Criminal History Category was VI because he
was a career offender pursuant to U.S.S.G. § 4B1.1(b).

Based upon these agreed-upon calculations in the Plea Agreement, the parties agreed that
Tazewell's sentencing Guidelines range was 267 to 327 months' imprisonment, with a
mandatory minimum sentence of 240 months. The parties further stipulated in the Plea
Agreement:

> It is agreed (i) that the defendant will not file a direct appeal, nor
> litigate under Title 28, United States Code, Section 2255 and/or
> Section 2241, any sentence within or below the Stipulated
> Guidelines Range set forth above and (ii) that the Government will
> not appeal any sentence within or above the Stipulated Guidelines
> Range.  It is further agreed that any sentence within the Stipulated
> Guidelines Range is reasonable.  This provision is binding on the
> parties even if the Court employs a Guidelines analysis different
> from that stipulated to herein. Furthermore, it is agreed that any
> appeal as to the defendant's sentence that is not foreclosed by this
> provision will be limited to that portion of the sentencing
> calculation that is inconsistent with (or not addressed by) the above
> stipulation.

(Exh. B at 4-5).

5

During Tazewell's plea hearing before the Honorable Andrew J. Peck on September 2, 2008, Tazewell acknowledged that he had signed the Plea Agreement, that he had read it with his attorney, and that he understood everything in the Plea Agreement when he signed it.  Plea Hearing Tr. at 12 (Exhibit C).  Tazewell also acknowledged that he had agreed to the stipulated guidelines range of 267 to 327 months' imprisonment, with a mandatory minimum sentence of 240 months.  (Exh. C at 12-13).  Further, Tazewell acknowledged that a sentence within the guidelines range would constitute a reasonable sentence in light of the factors set forth in 18 U.S.C. § 3553, and that he understood he had waived the right to file a direct appeal and to collaterally attack any sentence pursuant to 28 U.S.C. §§ 2241 or 2255 that was below or within the stipulated Guidelines range.  Id.

During the guilty plea, Judge Peck conducted a proceeding that complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure 11.  At the outset of the Rule 11 proceeding, Judge Peck placed Tazewell under oath.  (Exh. C at 2).  Judge Peck determined that Tazewell was not under the influence of alcohol or any drugs or medication that would affect his ability to understand the proceedings, and that Tazewell felt physically and mentally all right and able to proceed that day.  (Exh. C at 3-4).  Tazewell affirmed that he had received the Indictment, reviewed it with his attorney, and was satisfied with his attorney's representation. (Exh. C at 4-5). Judge Peck informed Tazewell that he was charged with agreeing with others to distribute a controlled substance, to wit, one kilogram and more of mixtures containing heroin. (Exh. C at 5).  Tazewell was also informed of, and acknowledged that he understood, the consequences of pleading guilty, namely, that: (1) because Tazewell had a prior conviction for a drug felony, he faced a maximum sentence of life imprisonment; (2) he faced a mandatary

6

minimum term of 20 years' imprisonment; (3) he faced a maximum term of supervised release of life and a mandatory minimum term of ten years' supervised release; (4) he faced a maximum fine or the greater of $10 million or twice the gross pecuniary gain from the offense; and (5) he faced a $100 mandatory special assessment.  (Exh. C at 6).  Tazewell was also informed of his constitutional rights, namely: (1) his right to plead not guilty and the right to have a trial by jury; (2) the fact that at trial he would be presumed innocent until the Government proved his guilt beyond a reasonable doubt; (3) his right to be represented by counsel at all stages of the case, and if necessary, to have counsel appointed for him free of charge; (4) his right to confront and cross-examine witnesses for the Government; (5) his right to remain silent and not incriminate himself or to testify on his own behalf if he wished to; (6) his right to call witnesses on his own behalf and compel their attendance by subpoena; and (7) the fact that if he pleaded guilty there would be no trial and he would give up all these rights.  (Exh. C at 6-7).

Judge Peck established that Tazewell had reviewed the sentencing guidelines with his attorney, and explained that the Court was obligated to calculate the sentencing Guidelines range, and that the guidelines were one of many factors that would be considered by the sentencing judge in determining Tazewell's sentence under Section 3553  (Exh. C at 8-9). Tazewell confirmed that he had not been threatened by anybody to convince him to plead guilty, and that other than what was contained in the plea agreement, no promises had been made to him to convince him to plead guilty.  (Exh. C at 11).

Judge Peck also established that there was a factual basis for the plea.  In his allocution, Tazewell admitted that in 2006, he agreed with his coconspirators to sell one kilogram or more of heroin, and to pick up heroin.  (Exh. C at 14).  He stated that he was in Baltimore when he did

this.  The Government proffered that the charged narcotics conspiracy involved individuals traveling to Manhattan from Baltimore.  (Exh. C at 15).   Defense counsel agreed there was no venue challenge.  Id.  After allocuting to these facts, Judge Peck found that Tazewell was competent to plead guilty and that his plea was made voluntarily and knowingly.  (Exh. C at 16).  Judge Peck then indicated that he would recommend that the district judge accept Tazewell's plea.  Id.  On September 8, 2008, the Court ordered that the defendant's guilty plea was accepted.  (See Dkt. No. 48).

**IV.   Sentencing**

Prior to sentencing, the United States Probation Office (the "Probation Office") issued a presentence investigation report ("PSR" or the "Presentence Report").  The Probation Office determined that the applicable Guidelines range was 262 to 327 months' imprisonment, with a mandatory minimum term of 20 years' imprisonment.  (PSR ¶ 101-102).   The Probation Office recommended a sentence of 262 months' imprisonment.  (PSR pg. 24).  On March 26, 2009, defense counsel submitted a sentencing letter requesting a below-guidelines sentence of 240 months' imprisonment on March 26, 2009.  (Dkt. No. 55).

Tazewell was sentenced on April 7, 2009.  (Exhibit D).   At sentencing, the Court confirmed that Tazewell had reviewed the Presentence Report and discussed it with his attorney.  (Exh. D at 5).  The Court determined that Tazewell had no objections to the Presentence Report other than the one item set forth in his sentencing submission, which related to the number of surviving children Tazewell had, as referenced in paragraph 75 of the Presentence Report.  (Exh. D at 6).  The Court ensured that both defense counsel and the defendant were given the opportunity to speak on his behalf at sentencing.  (Exh. D at 6-9).  Defense counsel requested a

below-guidelines sentence of 240 months.  The defendant asked the Court to "take back" the

prior felony information filed by the Government, so that his mandatory minimum would be ten

rather than 20 years.  (Exh. D at 8).  Defense counsel noted that he had discussed the prior felony

information with his client at length before it was filed and acknowledged that the Court could

not withdraw the information.  Exh. D at 9.  The Court then adopted the Guidelines calculations

set forth in the Presentence Report, which yielded a Guidelines range of 262 to 327 months'

imprisonment, with a mandatory minimum sentence of 240 months.  (Exh. D at 9-10).

The Court sentenced Tazewell to a term of 240 months' imprisonment, to be followed by

a term of ten years' supervised release.  (Exh. D at 9-10).  In doing so, Judge Berman made clear

that he had carefully considered all of the factors under Section 3553(a), as well as the applicable

statutory mandatory minimum.  (Exh. D at 11).  The Court declined to impose a fine or

restitution upon Tazewell, but did impose the $100 mandatory special assessment and forfeiture

in the amount of $35,000.  (Exh. D at 11-12). The Court also advised Tazewell of his right to

appeal his sentence to the extent permitted by the Plea Agreement.  (Exh. D at 12).  Judgment

was entered on April 7, 2009.

**V.      Appeal**

On April 22, 2009, Tazewell filed a notice of appeal, and subsequently requested leave to

proceed in forma pauperis.  On June 5, 2009, the District Court denied Tazewell's request, and

noted that Tazewell's notice of appeal was filed more than ten days after the entry of judgment.

On October 23, 2009, the Court of Appeals ordered that Tazewell's appeal be dismissed.

See Dkt. # 63.  The mandate issued on October 27, 2009.

Tazewell filed the instant petition on January 6, 2012, more than two years after the Court of Appeals dismissed his appeal.

## ARGUMENT

**I.     Tazewell's Time To File A Petition Pursuant To Section 2255 Has Expired**

The time limit for filing a claim under Section 2255 is one year.  See 28 U.S.C. § 2255 ("A 1-year period of limitation shall apply to a motion under this section.").  The limitation period runs from the latest of:

> (1)     "the date on which the judgment of conviction becomes final,"
>
> (2)     "the date on which the impediment to making a motion created by governmental action . . . is removed, if the movant was prevented from making a motion by such governmental action,"
>
> (3)     the date on which a right is newly-recognized by the U.S. Supreme Court, if the right is retroactively applicable, or
>
> (4)     the date on which the facts supporting the claims could have been discovered.

Id.  Subsection (2) has no application here because Tazewell does not allege that governmental action prevented him from bringing this motion.  Subsection (3) is also inapplicable because Tazewell does not assert that there is a newly-recognized right by the Supreme Court that is retroactively applicable.  And subsection (4) has no bearing because Tazewell cites no newly-discovered (or newly-discoverable) facts supporting his claim.

Under subsection (1), Tazewell's conviction became final on the date when the time for filing a petition for certiorari expired.  See Clay v. United States, 537 U.S. 522, 525 (2003).  On October 23, 2009, the Second Circuit affirmed Petitioner's conviction on direct appeal.  That Court's mandate issued on October 27, 2009.   Accordingly, Tazewell's conviction became

10

"final" ninety days after October 27, 2009, and his one-year limitations period for filing a petition under section 2255 expired in January 2011.

Tazewell did not file the instant Petition until, at the earliest, December 22, 2011 (the date indicated on Tazewell's Petition as the date he mailed a copy of the Petition to the Court), approximately a year after the Section 2255 statute of limitations expired. Tazewell cites nothing to justify tolling the time period, and the Government is not aware of any such justification. Tazewell's failure to bring his claims within one year of his final judgment of conviction therefore renders all of the claims in his Petition time-barred.

## II.     Tazewell Has Procedurally Defaulted His Substantive Claims

Tazewell has also procedurally faulted his claims by failing to raise them on direct appeal. It is well-settled that federal prisoners may not employ section 2255 as a substitute for direct appeal. See, e.g., United States v. Frady, 456 U.S. 152, 165 (1982); United States v. Addonizio, 442 U.S. 178, 184-85 (1979). As the Supreme Court explained in Frady, "[o]nce the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially where, as here, he already has [had] a fair opportunity to present his federal claims to a federal forum." United States v. Frady, 456 U.S. at 164. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted); accord Massaro v. United States, 538 U.S. 500, 504 (2003) ("claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice"); United States v. Warren, 335 F.3d 76, 79 (2d Cir. 2003)

11

("If the defendant fails to raise a claim of error on direct appeal, habeas relief is generally available only upon a showing of cause and prejudice.").

The Supreme Court has made clear that "cause" is measured by a stringent standard of diligence.  See, e.g., Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("cause" is "something external to the petitioner" that "cannot be fairly attributed to him"; "[a]ttorney ignorance or inadvertence is not 'cause'"); Murray v. Carrier, 477 U.S. 478, 488 (1986) ("cause" standard requires movant to demonstrate effect of some external factor, like "interference by officials"). Further, "the resulting prejudice must create an '*actual* and substantial disadvantage, infecting [the defendant's] entire trial with error of constitutional dimensions.'"  Narvaez v. United States, No. 95 Cr. 941 (PKL), 2003 WL 21749638, at *2 (S.D.N.Y. July 29, 2003).

Tazewell's claims are procedurally defaulted.  His claims attacking the indictment, his plea and sentence are all claims that he could have raised on appeal had he timely filed a notice of appeal.

## III. Tazewell Explicitly Waived His Right To Challenge His Sentence Pursuant To § 2255

Tazewell's sentencing claims further fail because he pleaded guilty pursuant to a plea agreement with an agreed-upon Sentencing Guidelines range of 262 to 327 months' imprisonment, and a waiver of his right to appeal or otherwise litigate pursuant to § 2255 any sentence at or below 262 months' imprisonment.  Since Tazewell was sentenced to a term that fell below the stipulated Guidelines range, he waived his right to litigate this sentence under § 2255.

The Second Circuit has repeatedly held that a defendant's waiver of the right to appeal a sentence is typically valid and enforceable.  See United States v. Morgan, 406 F.3d 135, 137 (2d

Cir. 2005); <u>United States</u> v. <u>Salcido-Contreras</u>, 990 F.2d 51, 52 (2d Cir. 1993).  As the Second

Circuit explained in <u>Salcido-Contreras</u>:

> In no circumstance may a defendant, who has secured the benefits
> of a plea agreement and knowingly and voluntarily waived the
> right to appeal a certain sentence, then appeal the merits of a
> sentence conforming to the agreement.  Such a remedy would
> render the plea bargaining process and the resulting agreement
> meaningless.

<u>United States</u> v. <u>Salcido-Contreras</u>, 990 F.2d at 53.  In <u>United States</u> v. <u>Ready</u>, 82 F.3d 551, 557

(2d Cir. 1996), the Second Circuit held that an appeal waiver should be enforced by an appellate

court "if the record 'clearly demonstrates' that the waiver was both knowing (in the sense that

the defendant fully understood the potential consequences of his waiver) and voluntary."  <u>Id.</u>

(quoting <u>United States</u> v. <u>Schmidt</u>, 47 F.3d 188, 190 (7th Cir. 1995)).  The knowing and

voluntary nature of the waiver can be established by demonstrating that during the plea hearing,

the defendant's attention was drawn to the waiver provision in the plea agreement.  <u>Id.</u>

Although appellate waivers are not absolute in scope, the circumstances under which the

Second Circuit has declined to enforce such waivers are very limited.  <u>See</u> <u>United States</u> v.

<u>Gomez-Perez</u>, 215 F.3d 315, 319 (2d Cir. 2000) ("The [ ] exceptions to the presumption of the

enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence.").  As the

Second Circuit noted in <u>Gomez-Perez</u>, such circumstances have only been found to exist

> when the waiver was not made knowingly, voluntarily, and
> competently, when the sentence was imposed based on
> constitutionally impermissible factors, such as ethnic, racial or
> other prohibited biases, when the government breached the plea
> agreement, or when the sentencing court failed to enunciate any
> rationale for the defendant's sentence. . . .

<u>Gomez-Perez</u>, 215 F.3d at 319 (citations omitted).

13

Similarly, in <u>United States</u> v. <u>Pipitone</u>, the Second Circuit held that a petitioner may not circumvent an appellate waiver provision in a plea agreement by filing a Section 2255 petition instead of an appeal.  67 F.3d 34, 39 (2d Cir. 1995) (refusing to use "linguistic distinction" between an appeal and a 2255 motion to allow circumvention of plain waiver language contained in plea agreement); <u>see also</u> <u>Gumbs</u> v. <u>United States</u>, 8 F. Supp. 2d 882, 883 (S.D.N.Y. 1998) (holding that Section 2255 "waiver is enforceable and constitutes a separate ground for dismissal of the Petition" because imposed sentence fell within the stipulated Guidelines range); <u>United States</u> v. <u>Montague</u>, 5 F. Supp. 2d 205 (S.D.N.Y. 1998) (same).  In fact, a waiver of the right to appeal a sentence within a certain range may be enforced even in the face of a claim that the sentence ultimately imposed was illegal.  <u>See</u> <u>United States</u> v. <u>Yemitan</u>, 70 F.3d 746, 749 (2d Cir. 1995) (granting Government's motion to dismiss appeal based on waiver in plea agreement despite claim that District Court failed to comply with statutory requirement regarding sentencing procedure); <u>United States</u> v. <u>Maher</u>, 108 F.3d 1513, 1531 (2d Cir. 1997) (declining to address merits of sentencing contentions in light of waiver in plea agreement).

In this case, Tazewell pleaded guilty pursuant to a plea agreement in which he: (i) stipulated that the applicable Sentencing Guidelines range was 262 to 327 months' imprisonment; and (ii) waived his right to appeal or collaterally attack under Title 28, United States Code, Section 2255, any sentence within or below the Stipulated Guidelines Range.  During Tazewell's plea proceeding, the Court called the appellate waiver to Tazewell's attention, and Tazewell confirmed that he understood that he was waiving his right to appeal or collaterally attack a sentence of 262 months' imprisonment or less.  (Exh. C at 12-13).

14

In exchange for the execution of his plea agreement, Tazewell received considerable benefits, including, inter alia, the Government's stipulation that the drug quantity attributable to Tazewell was one kilogram or more, rather than a higher drug quantity.  In addition, Tazewell received the benefit of the three-level reduction he was accorded by the District Court for acceptance of responsibility and a timely plea, notwithstanding he pled guilty on the eve of trial.

Because Tazewell has "secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence," this Court should now enforce the appellate waiver provision, otherwise, it "would render the plea bargaining process and the resulting agreement meaningless."  United States v. Salcido-Contreras, 990 F.2d at 53.  Tazewell has not alleged – nor could he – that his entry of a guilty plea pursuant to the plea agreement with an appellate and habeas waiver was somehow not knowing or voluntary.  Instead, Tazewell pleaded guilty only after the Court ensured that he was competent to do so, and that he had a full understanding of the potential penalties that he faced and the rights that he was giving up by pleading guilty.  Moreover, Tazewell told the Court, during his guilty plea proceeding, that he had read and discussed the plea agreement with his lawyer, and the Court specifically directed Tazewell's attention to the waiver provision of that agreement, which Tazewell stated that he understood.  Accordingly, there is no basis on which to overturn the waiver provision, which was entered into knowingly and voluntarily by Tazewell, and for which he received considerable benefits at the time of his plea.  See Gomez-Perez, 215 F.3d at 319.

**IV.    Tazewell Has Not Raised Any Meritorious Claim Warranting Dismissal of the Indictment, Withdrawal of His Plea Or Resentencing**

Finally, even if Tazewell's claims were not untimely, procedurally barred, and precluded by the waiver in his plea agreement, the Court should still dismiss Tazewell's Petition because his claims lack merit.

First, Tazewell's claims regarding the insufficiency of the Indictment should be rejected. To be legally sufficient, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States* v. *Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (citations omitted); *United States* v. *LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002); *United States* v. *Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citations omitted). "In short, 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *LaSpina*, 299 F.3d at 177 (quoting *Hamling* v. *United States*, 418 U.S. 87, 117 (1974)). Further, an indictment "'must be read to include facts which are necessarily implied by the specific allegations made.'" *Stavroulakis*, 952 F.2d at 693 (quoting *United States* v. *Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)). Based on these principles, the Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." *United States* v. *Walsh*, 194 F.3d at 45 (internal quotation marks and citation omitted).

Contrary to Tazewell's assertion, the Indictment did set forth all of the elements of the offense of conspiracy. The Indictment specifically alleged that the defendants "unlawfully, intentionally and knowingly" conspired with others to violate the narcotics laws, and it

specifically identified the drug type and quantity in the "to wit" clause, namely one kilogram and more of heroin.   The Indictment set forth the alleged period of time during which the conspiracy took place (from 2002 to 2006), and the overt acts made clear that the defendant's role was to instruct coconspirators to travel from Baltimore to New York to purchase heroin for him.

Second, Tazewell's contentions regarding the sufficiency of his plea proceeding are without merit.  Judge Peck informed Tazewell of the nature of the conspiracy charge against the defendant during the plea hearing, and confirmed that he had reviewed the indictment with his attorney, and was satisfied with his attorney's representation.  Additionally, Tazewell gave a sufficient factual allocution to the single charge in the indictment.  Tazewell admitted that in 2006, he agreed with his coconspirators to sell one kilogram or more of heroin, and to pick up heroin.  Exh. C at 14.  The Government proffered that Tazewell gave instructions to his coconspirators to travel from Baltimore to New York.  Tazewell admitted he was in Baltimore when participating in the conspiracy, and defense counsel agreed there was no challenge to venue.  This constitutes a sufficient factual allocution.

Third, Tazewell's claim that the Court failed to make the required factual findings for the sentence imposed is incorrect.  The defendant allocuted to conspiring to distribute one kilogram and more of heroin, and the Guidelines calculation was based on that factual allocution.  Further, the Court properly calculated the Guidelines range (with no objection from the parties), and expressly considered the factors in Section 3553 in imposing sentence.  Accordingly, there was no procedural error in the Court's sentence.  *See Gall* v. *United States*, 128 S. Ct. 586, 597 (2007) (procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines range as mandatory, failing to consider the Section 3553(a)

17

factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range").

Additionally, the Court's below-guidelines sentence of 240 months – which was the statutory minimum sentence available – was substantively reasonable.  *See United States* v. *Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances.").  Moreover, the Court arrived at the sentence based on the undisputed quantity of drugs admitted by Tazewell at his plea allocution.

Finally, Tazewell's contention that the Court had the power to require the Government to withdraw the prior felony information is without merit.  The Government has discretion to decide whether to file a prior felony information in a given case, so long as it does not base its decision on an improper factor, such as race, religion, or another "arbitrary classification." *United States* v. *Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008).  Prosecutorial decisions, including the filing of prior felony informations, are subject to a presumption of regularity.  *See id.*  To overcome that presumption, a defendant must do more than present "[g]eneralized allegations of improper motive."  *Id*.  Instead, "some evidence" of improper motive must be presented before a court can inquire behind the prosecutorial decision.  *Id.*

It is well settled, moreover, that a prosecutor may base charging decisions on whether the defendant pleads guilty or proceeds to trial.  *See Bordenkircher* v. *Hayes*, 434 U.S. 357, 364–65 (1978).  A prosecutor's "desire to induce a guilty plea" is not an improper motive that, "like race or religion, may play no part in [the prosecutor's] charging decision." *Id.*

18

The Government's filing of a prior felony information in this case was proper.  Tazewell had every opportunity to plead guilty to his offenses without the prior felony enhancement under 21 U.S.C. §851.  Only after the trial date was set, and within weeks of the scheduled trial date, did the Government finally file the prior felony information.

## Conclusion

For the reasons set forth above, the Government respectfully requests that the Court dismiss Tazewell's Petition in its entirety.

Dated: New York, New York
      December 18, 2012

                Respectfully submitted,

                PREET BHARARA
                United States Attorney for the
                Southern District of New York

By:     /s/ Antonia Apps
                Antonia M. Apps
                Assistant United States Attorney
                (212) 637-2198

## AFFIRMATION OF SERVICE

ANTONIA M. APPS, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  That, on December 18, 2012, I caused the Government's Memorandum of Law in Opposition to Defendant Tremain Tazewell's Motion To Dismiss Indictment and Withdraw Plea Agreement be filed via the Electronic Case Filing system, and also to be delivered by United States Mail to:

> Tremain Tazewell
> USMS# 42966-037
> FCI McKean
> Federal Correctional Facility
> PO Box 8000
> Bradford, PA 16701

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
          December 18, 2012

                                        /s/ Antonia M. Apps
                                        Antonia M. Apps