UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                  :
                                           :       07 Cr. 1035 (RMB)
        - against -                        :
                                           :       **DECISION & ORDER**
TREMAINE TAZEWELL,                         :
                                           :
                    Defendant.             :
------------------------------------------------------------x

      Having reviewed the record herein, including without limitation: **(1)** Defendant Tremaine Tazewell's pro se motion, dated July 17, 2020, requesting compassionate release and reduction of his sentence to time served. Def. Mot. at 1. Tazewell, who is 41 years old, advises, among other things, that: his medical conditions include hypertension, high blood pressure, hyperlipidemia, and sickle cell trait which, combined with the current COVID-19 pandemic, constitute compelling and extraordinary circumstances warranting compassionate release. Tazewell also contends that he faces "a particularly high risk" of contracting COVID-19 at the prison facility where he is incarcerated, which is FCI Fort Dix, which he terms is "a hot-bed of the COVID-19 virus" and where he complains "there is no social distancing," "virtually no one wears masks," and "disinfecting is sporadic at best." Def. Mot. at 2, 4, 7; **(2)** the Government's opposition, dated August 18, 2020, contending that: Tazewell does not have "health conditions that place [him] at a heightened risk of complications from COVID-19"; "the BOP has made significant efforts to reduce the risk of [Tazewell] contracting COVID-19 at Fort Dix"; and "shortening his sentence would be inconsistent with the Section 3553(a) factors in light of the defendant's extensive history of drug dealing." See Gov't Opp. at 4, 5, 6. The Government submits Tazewell's BOP medical records which reflect his physical examinations at FCI Fort Dix between May 2016 and June 2020; **(3)** Tazewell's pro se reply, dated September 9, 2020, contending (persuasively) that: "many other courts have found that individuals with hypertension are at severe risk of complications from COVID-19"; and describing his personal rehabilitation accomplishments during his incarceration (for a **mandatory**

1

**minimum** of 20 years). See Def. Reply at 1-2; **(4)** Tazewell's supplemental brief, dated November 24, 2020, addressing "the deteriorating COVID-19 situation at FCI Fort Dix." See Def. Suppl. Br. at 1; and **(5)** the Government's supplemental response, dated December 29, 2020, contending that "[Tazewell] has not shown that there are active cases in his housing unit." See Gov't Suppl. Resp. at 1, **the Court hereby grants Tazewell's motion for compassionate release effective immediately, releasing him from incarceration and reducing his supervised release obligation to 4 years, as follows:[1]**

**I.   Background**

On September 2, 2008, Tazewell pleaded guilty to conspiracy to distribute and possess with intent to distribute heroin, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. See Sept. 8, 2008 Order. Because of his prior drug convictions, Tazewell faced a statutory mandatory minimum sentence of 240 months' imprisonment followed by 10 years of supervised release which the Court was constrained to impose on April 7, 2009. See Sentencing Tr. at 9:20-10:3. Tazewell's Sentencing Guidelines range was 262 to 327 months; his criminal history category was VI; and his offense level was 34. Id. at 3:11-13. At the time of his conviction, Tazewell had a history of drug and alcohol abuse. Id. at 4:5-7.

Tazewell, as noted, is incarcerated at FCI Fort Dix in New Jersey which is described as a "low-security federal correctional institution with an adjacent minimum-security satellite camp." See FCI Fort Dix, BOP, https://www.bop.gov/locations/institutions/ftd/; see also Def. Mot. at 2; Gov't Opp. at 3. "Fort Dix is thus two separate (although adjacent) institutions, referred to as 'Fort Dix Low' and 'Fort Dix Camp.'" See Gov't Opp. at 3. Tazewell is incarcerated in Fort Dix Low. Id.

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

As of January 2, 2021, Tazewell had been incarcerated over 12 years. See Gov't Opp. at 3; Def. Mot. at 3. "Based on the Bureau of Prisons' [] current calculations, if [Tazewell] remains on good behavior his scheduled release date is August 6, 2025." See Gov't Suppl. Resp. at 1.

## II.     Legal Standard

18 U.S.C. § 3582(c)(1)(A) provides in part:

[T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C. § 3582 "allows a court to reduce a term of imprisonment or supervised release after considering the factors set forth in 18 U.S.C. § 3553(a) and finding that 'extraordinary and compelling reasons warrant such a reduction.'" *See United States v. Turnbull*, 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020); *see also United States v. Sturgis*, 2020 WL 7063359, at *3 (W.D.N.Y. Nov. 24, 2020).

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement."

"[I]n deciding a compassionate release motion brought directly by a prisoner . . . [t]he court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). However, "a district court's discretion in this area – as in all sentencing matters – is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). District courts are "free[] . . . to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

**III.    Principal Findings**

The Court's findings are as follows:

1. Tazewell has exhausted his administrative remedies. *See United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020); *United States v. Gray*, 2020 WL 3050730, at *3 (S.D.N.Y. June 8, 2020). On April 17, 2020, Tazewell wrote to the Warden of FCI Fort Dix requesting "Compassionate Release as an inmate with a Debilitated Medical Condition." See Gov't Opp. Ex. 1 at 1. On May 3, 2020, the Warden denied Tazewell's request. Id.

2. Tazewell's BOP medical records clearly confirm that he suffers from several serious medical conditions, including hypertension, high blood pressure, hyperlipidemia (high cholesterol), and sickle cell trait. See e.g. BOP Medical Records Ex. 2 at 1, 13, 16; BOP Medical Records Ex. 3 at 3; BOP Medical Records Ex. 4 at 37. And, Tazewell's medical conditions clearly create a significant risk of severe illness from COVID-19 – and are extraordinary and compelling conditions (reasons) warranting compassionate release, as follows:

    a. The Centers for Disease Control and Prevention (CDC) has designated hypertension as "associated with increased illness severity and adverse outcomes from COVID-19." *See United States v. Gotti*, 2020 WL 7706828, at *3 (S.D.N.Y. Dec. 29, 2020). "[P]eople with hypertension face at least a two-fold risk of death from COVID-19 compared to non-hypertensive individuals." *See United States v. Salvagno*, 456 F.Supp.3d 420, 446 (N.D.N.Y. 2020) (citing Gao et al., *Association of Hypertension and Antihypertensive Treatment with COVID-19 Mortality*, EUROPEAN HEART JOURNAL, June 5, 2020). Tazewell's hypertension is established in BOP Medical Records Ex. 2 at 13, 16 and BOP Medical Records Ex. 7 at 7.

    b. The CDC has also designated high blood pressure – as reflected in Tazewell's series of blood pressure readings at above 130/80 – as a condition "that lead[s] or may lead to an 'increased risk of severe illness from COVID-19.'" *See United States v. Vasquez*, 2020 WL 5038006, at *2 (S.D.N.Y. Aug. 26, 2020); People with Certain Medical Conditions,

https://www/cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 29, 2020). Tazewell's high blood pressure is established in BOP Medical Records Ex. 2 at 1, 2, 6, 13, 17, 20, 25 and BOP Medical Records Ex. 3 at 1, 3, 12, 18. The BOP Medical Records show, for example, that Tazewell had blood pressure readings of 141/98 on June 17, 2020; 149/95 on May 27, 2020; 132/84 on December 4, 2019; and 148/80 on September 9, 2019. See BOP Medical Records Ex. 2 at 2, 6, 13. Tazewell's BOP Medical Records also state that he has a "history of elevated blood pressures" and that his blood pressure is "poorly-controlled." Id. at 1, 17.

  c. "Hyperlipidemia (high cholesterol) has proven to be one of the most common comorbidities in COVID-19 related fatalities." *See United States v. Hurst*, 2020 WL 7490232, at *3 (W.D. Pa. Dec. 21, 2020); *United States v. Jones*, 2020 WL 3892960, at *3 (E.D. Pa. July 9, 2020). Hyperlipidemia is the third most common comorbidity among COVID-19 fatalities. *See Jones*, 2020 WL 3892960, at *3; COVID-19 Tracker, New York State Department of Health, https://www.covid19tracker.health.ny.gov/views/NYS-COVID-19-Tracker/. Tazewell's hyperlipidemia is established in BOP Medical Records Ex. 2 at 2, 7, 16, 34; BOP Medical Records Ex. 3 at 26; and BOP Medical Records Ex. 4 at 37.

  d. And, "a person with the sickle cell trait may experience serious complications if diagnosed with COVID-19." *See United States v. Thompson*, 2020 WL 3470301, at *3 (C.D. Ill. June 25, 2020) (citing Sickle Cell Trait, CDC, https://www.cdc.gov/ncbddd/sicklecell/traits.html); *United States v. Lewis*, 2020 WL 5095471, at *5 (W.D. Wash. Aug. 28, 2020). Tazewell's sickle cell trait condition is established in BOP Medical Records Ex. 2 at 1; and BOP Medical Records Ex. 4 at 47.

3. FCI Fort Dix appears to be experiencing a persistent and significant rise in COVID-19 cases. As of January 2, 2021, there were 586 inmates at FCI Fort Dix with active COVID-19 cases (out of a population of 2,743 inmates). See COVID-19: Coronavirus, BOP, https://www.bop.gov/coronavirus/

(last visited Jan. 2, 2021). Since the beginning of the COVID-19 pandemic starting in March 2020, a total of 1,084 inmates have tested positive at FCI Fort Dix. Id.

On December 8, 2020, a delegation of twelve (12) New Jersey lawmakers, including U.S. Senators Robert Menendez and Cory A. Booker, submitted a letter to BOP Director Michael Carvajal expressing "**serious concerns regarding the Bureau of Prison's [] response to the ongoing COVID-19 outbreak at FCI Fort Dix**." See "Menendez, Booker, NJ Delegation Renew Call to Halt Transfers to Fort Dix Amidst Continuing COVID-19 Outbreak," https://www.menendez.senate.gov/ (emphasis added).

4. Courts have increasingly recognized the significant rise and outbreak of COVID-19 at FCI Fort Dix in support of their determinations of compassionate release. *See e.g. United States v. Avery*, 2020 WL 6728781, at *1 (S.D.N.Y. Nov. 16, 2020) (where the court pointed out that "in recent months, the incidence of COVID-19 at FCI Fort Dix . . . has increased at an alarming rate"); *United States v. Fernandez*, 2020 WL 7647459, at *3 (S.D.N.Y. Oct. 14, 2020) (where the court found that the "number of current cases at FCI Fort Dix [] marks a worrying uptick"); *United States v. Vega*, 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020) (where the court described "failure . . . to prevent and control a COVID-19 outbreak at FCI Fort Dix"); *United States v. Staats*, 2020 WL 6888224, at *2 (E.D. Pa. Nov. 24, 2020) (where the court stated that "FCI Fort Dix is experiencing an uncontrolled outbreak of COVID-19").[2]

---

[2] Serious COVID-19 issues at prisons are not, of course, confined to BOP Fort Dix. According to the *New York Times*: "From California to Missouri to Pennsylvania, state and local officials say that so many guards have fallen ill with the virus and are unable to work that abruptly closing some [state] correctional facilities is the only way to maintain community security and prisoner safety." See Brendon Derr et al., *States Are Shutting Down Prisons as Guards Are Crippled by COVID-19*, NEW YORK TIMES, Jan. 2, 2021.

5. The Court finds that Tazewell does not present a danger to the community. This is evidenced by, among other things, (i) the length of incarceration he has already served; (ii) the steps he has taken toward recovering from his drug and alcohol addictions while incarcerated; and (iii) the responsible plan he has developed for a law-abiding post-release life in Washington, D.C. with his family. Tazewell states: "I accept[] full responsibility for my offense and I sincerely regret my transgression and the harm I caused to others and to my family . . . Without offering excuses, I respectfully state the loss of my moral compass and transgression arose out of my drug addiction. During my incarceration I have (with counseling) overcome my addiction and I am now drug free. I will never return to drug use . . . During my incarceration I have successfully completed two drug courses and approximately 30 educational courses." See Def. Mot. at 3.

6. Compassionate release of Mr. Tazewell is also fully consistent with the sentencing factors at 18 U.S.C. § 3553(a). See also discussion at pp.11-13, *infra*.

7. Tazewell is entitled to immediate compassionate release from incarceration and a reduction of his supervised release term from 10 to 4 years. The conditions attached to the 4 year term of supervised release are those set forth in the sentencing Judgment, dated April 7, 2009, and include "participation in a program approved by the U.S. Probation Office for substance abuse"; and "participation in weekly individual therapeutic counseling by a licensed therapist." See Sentencing Tr. at 10:3-11:1; Judgment; see also discussion at p.14, *infra*.

## IV. Additional Findings

Tazewell's medical conditions, as noted, combined with the COVID-19 pandemic and compounded by the conditions at FCI Fort Dix, constitute extraordinary and compelling circumstances warranting Tazewell's compassionate release. Tazewell's release is also consistent with the 18 U.S.C § 3553(a) sentencing factors and is supported by the Court's finding that he does not pose a danger to the community.

**(1) Tazewell's Medical Conditions**

Tazewell has met his burden of proving that he suffers from hypertension, high blood pressure, hyperlipidemia, and sickle cell trait. See e.g. Def. Mot. at 4 ("My medical records . . . demonstrate I suffer from chronic hypertension . . . and sickle cell [trait]."); BOP Medical Records Ex. 2 at 13, 16 ("History of hypertension"); Id. at 17 ("Inmate has history of elevated blood pressures, was on blood pressure checks at one time"); Id. at 2 ("Assessment: Hyperlipidemia"); BOP Medical Records Ex. 4 at 47 ("Medical History: . . . Sickle Cell Anemia Trait: Yes"); Gov't Opp. at 5 ("the defendant's medical records confirm that he has a history of high blood pressure"). These medical conditions create a heightened risk of severe illness if Tazewell were to contract COVID-19 (see discussion at pp. 4-5, *supra*) and constitute extraordinary and compelling circumstances warranting Tazewell's immediate compassionate release.

Recent decisions support Tazewell's compassionate release. In *United States v. Pena*, 459 F. Supp. 3d 544 (S.D.N.Y. 2020) (Nathan, D.J.), the court found that "[the defendant] has several underlying health conditions that increase his vulnerability to COVID-19 infection and, if infected, to the risk of serious injury or death. Specifically, [the defendant] suffers from hypertension and hyperlipidemia." *Id.* at 550. The court also noted: "[t]he Centers for Disease Control and Prevention has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19. This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension." *Id.* Judge Nathan held that these medical conditions were "extraordinary and compelling, and . . . warrant[ed] compassionate release," *id.* at 552 -- as is also true in Tazewell's case.

Similarly, in *United States v. Zoquier-Solano*, 2020 WL 6193859 (S.D.N.Y. Aug. 10, 2020) (Oetken, D.J.), the court found that the defendant, "a 42-year-old man who suffers from a combination of medical conditions, including hypertension [and] hyperlipidemia" was at "heightened risk if he were to contract COVID-19." *Id.* at *2. The court held that "the COVID-19 pandemic, coupled with Defendant's physical and medical condition and the conditions at Defendant's prison facility [FCI Fort Dix] provide 'extraordinary and compelling reasons' for reducing his sentence." *Id.*

8

And, in *United States v. De La Cruz*, 2020 WL 6193891 (D. Conn. Oct. 22, 2020), the defendant sought compassionate release based on her high blood pressure and obesity. *Id.* at *4. The court noted: "[c]ourts in this District, and other courts in this Circuit, have held that the same or similar underlying medical conditions, alone or separately, combined with the risk of coronavirus, constitute extraordinary and compelling reasons for release," and "the Government does not dispute[] that [defendant's] obesity and high blood pressure put her at greater risk of suffering severe illness should she contract COVID-19." *Id.* "Accordingly, the Court finds that extraordinary and compelling reasons exist to warrant [defendant's] release." *Id.*; *see also United States v. Hernandez*, 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (where the court "conclude[d] that compelling reasons exist[ed] . . . based on, among other things, the unique confluence of serious health issues and other risk factors facing this defendant, including . . . high blood pressure, which places him at a substantially heightened risk of dangerous complications should he contract COVID-19 as compared to most other individuals").

In *United States v. Lewis*, 2020 WL 5095471 (W.D. Wash. Aug. 28, 2020), the court found that the 43-year-old defendant's sickle cell trait placed him at risk of "serious complications if diagnosed with COVID-19" and warranted compassionate release. *Id.* at *5; *see also Thompson*, 2020 WL 3470300, at *3 (where the court found that "a person with the sickle cell trait may experience serious complications if diagnosed with COVID-19," and that the defendant's sickle cell trait, as well his "serious back injuries, previous drug addictions, and obesity . . . increase the serious risks of COVID-19 for Defendant").

These decisions clearly support a finding that Tazewell's hypertension, high blood pressure, hyperlipidemia, and sickle cell trait place him at severe risk of serious illness from COVID-19.

**(2) Conditions at FCI Fort Dix**

The Court finds that the prison conditions at FCI Fort Dix, in combination with Tazewell's significant health conditions, constitute extraordinary and compelling circumstances supporting his release. An increasing number of courts in this district have found that defendants' pre-existing medical

conditions, combined with the increased risk of COVID-19 in prison settings and particularly Fort Dix create extraordinary and compelling circumstances. *See e.g. Fernandez*, 2020 WL 7647459, at *4.

Very recently, an S.D.N.Y. district judge held that "[c]onditions at [FCI Fort Dix] appear to present serious risks of both spread of the virus and inadequate medical care for those who have been infected." *United States v. Rodriguez*, 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020). With respect to the "spread of the virus," the Government in Tazewell's case does not dispute that "there has been a troubling increase in the number of COVID-19 cases at FCI Fort Dix," including 586 active COVID-19 cases among 2,743 inmates as of January 2, 2021. See Gov't Suppl. Resp. at 2-3; Def. Mot. at 3, 5. With respect to medical care, it is alleged that infected inmates are given "no more medical care than Tylenol and bed rest." *Rodriguez*, 2020 WL 7640539, at *4; *see also* Keegan Hamilton, *Federal Prisons Keep Turning Into COVID Nightmares: Everyone Looks Like Death*, VICE NEWS, Nov. 28, 2020 ("prisoners at Fort Dix also alleged a lack of adequate medical care, with staff only offering Tylenol for all but the most severe symptoms").

The joint letter submitted by U.S. Senators Robert Menendez and Cory A. Booker to BOP Director Michael Carvajal, dated December 8, 2020 (discussed at p.6, *supra*), notes "the failure to contain the spread of COVID-19 at FCI Fort Dix during this . . . ongoing outbreak." It confirms that "incarcerated individuals have alleged that FCI Fort Dix is not providing sufficient medical treatment to individuals infected with COVID-19." See "Menendez, Booker, NJ Delegation Renew Call to Halt Transfers to Fort Dix Amidst Continuing COVID-19 Outbreak," https://www.menendez.senate.gov/.

In its opposition, dated August 18, 2020, the Government stated that there were 39 COVID-19 cases at FCI Fort Dix. See Gov't Opp. at 3. Subsequently, in its supplemental brief, dated December 29, 2020, the Government acknowledged that there were 295 active COVID-19 cases at FCI Fort Dix. See Gov't Suppl. Resp. at 2. As noted, as of January 2, 2021, the BOP reports that there are 586 active COVID-19 cases at FCI Fort Dix. It is not unreasonable to assume that such a dramatic spike in the number of cases would further impair the ability of Fort Dix to provide adequate medical care.

The Court believes that BOP officials at Fort Dix may be endeavoring to provide a safe prison environment but also that: (1) COVID-19 may spread to and overwhelm inmates with pre-existing medical conditions such as Tazewell; and (2) if Tazewell does contract the virus, he is at serious risk of severe illness and death. The prison conditions, coupled with Tazewell's medical conditions and the pandemic (see discussion at pp. 4-6, 8-10) create "extraordinary and compelling reasons." *See e.g. United States v. Davis*, 2020 WL 6785351, at *3 (D. Md. Nov. 18, 2020) ("a reduced sentence would be consistent with the need to provide the defendant with necessary medical care . . . [it] would reduce the risk that he will contract COVID-19 and have a severe case based on his [] hypertension, and would benefit the BOP by allowing it to focus its medical resources on COVID-19 within FCI Fort Dix").

**(3) <u>Tazewell's Sentence Reduction Is Consistent with the 18 U.S.C. § 3553(a) Factors</u>**

Tazewell's request for compassionate release is thoroughly consistent with the goals of sentencing which include the need "to reflect the seriousness of the offense, to promote respect for the law, [ ] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *United States v. Harris*, 2020 WL 5801051, at *3 (S.D.N.Y. Sept. 29, 2020). "The Court . . . is free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).

Tazewell's underlying drug-trafficking offense (conspiracy to distribute and possess with intent to distribute heroin) was serious, as are other narcotics-distribution crimes. But unlike many other cases, Tazewell's conviction triggered a mandatory minimum sentence of 20 years of incarceration (followed by mandatory 10 years of supervised release). In the Court's view, Tazewell's mandatory minimum sentence was higher than necessary to reflect "seriousness" and "to promote respect for the law."

Deterrence and protection of the public have been accomplished here. Tazewell has spent more than 12 years in prison. See <u>Def. Mot</u> at 3. That represents more than 60% of his total 20-year sentence.

*See United States v. Hernandez Frometa*, 2020 WL 6132296, at *4 (S.D.N.Y. Oct. 19, 2020) (where defendant "ha[d] served . . . over 60 percent of his sentence, which is sufficient to satisfy the purposes of criminal sentencing"); *United States v. Van Praagh*, 2020 WL 3892502, at *1, 4 (S.D.N.Y. July 10, 2020); *United States v. Asaro*, 2020 WL 1899221, at *6 (E.D.N.Y. Apr. 17, 2020). The Government confirms that Tazewell has approximately 5 years remaining on his sentence and is scheduled to be released on August 6, 2025 if "he remains on good behavior." See Gov't Opp. at 3; Gov't Suppl. Resp. at 1. When factoring in his good time, Tazewell has served **71%** of his sentence. *See e.g. United States v. Bess*, 455 F.Supp.3d 53, 55 (W.D.N.Y. 2020) (where the court granted compassionate release to a defendant who "crediting 'good time,' has served roughly 60% of his sentence").

Tazewell's 20-year mandatory minimum sentence is likely more severe than defendants would face today. The Government acknowledges that: "At the time of the defendant's conviction, the mandatory minimum . . . was twenty years' imprisonment. When Congress enacted the First Step Act in 2018, it lowered the applicable mandatory minimum to fifteen years' imprisonment." See Gov't Opp. at 7. Releasing Tazewell at this time would bring his sentence (more) in line with the First Step Act. *See United States v. Vargas*, 2020 WL 6886646, at *8 (S.D.N.Y. Nov. 24, 2020).

Tazewell was incarcerated more than 12 years ago at age 28. It has been 13 years since he last committed a crime. He has taken several significant rehabilitative steps while incarcerated. For example, Tazewell states that he has completed "[drug] counseling[] [and] overcome [his] addiction," and that he has "successfully completed 2 drug courses and approximately 30 educational courses." See Def. Mot. at 4, 5. The Court believes that recidivism is less likely to occur in this case. *See United States v. Fisher,* 2020 WL 5992340, at *7 (S.D.N.Y. Oct. 9, 2020) ("[Defendant's] age and time removed from criminal activity . . . lessen the need for further specific deterrence or to 'protect the public from further crimes'"). With the appropriate conditions of supervision already in place, including that Tazewell "participate in a program approved by the U.S. Probation Office for substance abuse"; and that he "participate in weekly individual therapeutic counseling by a licensed therapist," the Court believes that releasing Tazewell early

will, in fact, promote respect for the law. See Sentencing Tr. at 10:3-11:1; Judgment at 3-4; *see also United States v. Davies*, 469 F. Supp. 3d 175, 176, 179 (S.D.N.Y. 2020) ("the § 3553(a) factors will be served, and a just sentence imposed, by granting compassionate release" to defendant who had been "involved in a large-scale drug trafficking conspiracy"); *United States v. Torres*, 464 F. Supp. 3d 651, 659 (S.D.N.Y. 2020) ("the section 3553(a) sentencing factors strongly favor a significant sentence reduction" for defendants who had been convicted of conspiracy to distribute heroin and conducting a continuing criminal enterprise).

**(4) No Danger to the Community**

Apart from the fact that Tazewell has proven by a preponderance of the evidence that there are extraordinary and compelling health conditions that warrant compassionate release, the Court finds that Tazewell's early release from incarceration will not pose a danger to the community. This finding is based upon several factors:

For one thing, Tazewell's crime of conviction, although serious, does not appear to have involved violence. *See United States v. Hayes*, 2020 WL 3790615, at *3 (N.D. Ill. July 7, 2020). It reflects, in part, Tazewell's historical drug issues which he seems quite willing to address.

Second, while in custody, Tazewell has taken drug counseling programs in a serious attempt to overcome his addiction. Def. Mot. at 5. Tazewell voluntarily "successfully completed 2 drug courses and approximately 30 educational courses." Id. at 4. These rehabilitative efforts are commendable. *See United States v. Pena*, 459 F. Supp. 3d 544, 552 (S.D.N.Y. 2020).

Third, the BOP's placement of Tazewell at the low-security facility at Fort Dix suggests that the BOP does not consider him to be a danger to the (prison) community. *See United States v. Hernandez*, 2020 WL 3893513, at *4 (S.D.N.Y. July 10, 2020).

Fourth, Tazewell has presented a sensible initial release plan. He states that "subject to the approval of this Court and Probation" he will live with his wife and son at their home in Washington, D.C. See Def. Mot. at 6. He is already seeking employment and represents that he will be able to secure

employment working in a warehouse in Jessup, Maryland. Id. Tazewell also plans to "stay at home during the COVID-19 pandemic [and his] wife will attend to the housekeeping and shopping." Id. And, he also states that "he will not be a burden to the United States taxpayer because [he] ha[s] insurance through [his] wife to pay for [his] medical expenses." Id. Tazewell's return to a supportive and stable environment further reduces any risk he will recidivate. *See United States v. Franco*, 2020 WL 4344834, at *3 (S.D.N.Y. June 24, 2020).

Under his supervised release obligations, Tazewell will be required to "participate in a program approved by the U.S. Probation Office for substance abuse"; and "participate in weekly individual therapeutic counseling by a licensed therapist," along with the mandatory conditions of supervision. See Sentencing Tr. at 10:3-11:1; Judgment. *See United States v. Vargas*, 2020 WL 6886646, at *9 (S.D.N.Y. Nov. 24, 2020) (where the court found that the defendant's "impending [] term of supervised release will adequately ensure his continued good behavior and abstention from . . . criminal conduct"); *United States v. Marks*, 455 F. Supp. 3d 17, 35 (W.D.N.Y. 2020) ("Beyond the low risk that [defendant] now presents, whatever risk there is can be further mitigated by supervised release").

### V.    Conclusion & Order

For the reasons set forth above, Defendant's motion for compassionate release [Dck. #77] is granted. The Government's request [Dck. #81] to file Exhibits 2 through 7 (BOP medical records) under seal is granted. *United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Defendant's previously imposed sentence of 240-months' imprisonment is reduced to time served effective immediately and Defendant's supervised release is reduced to 4 years (and is subject to the conditions imposed in the Judgment, dated April 7, 2009).

Dated:  New York, New York
        January 3, 2021

_____
**RICHARD M. BERMAN, U.S.D.J.**